Good morning, Council. Good morning, Your Honors. May it please the Court, I'm Lindsay Craven for Plaintiff Appellant Jeffrey Barnes. The most important issue here in this case is whether the record as it is currently supports a finding that there are jobs that exist in significant numbers in the national economy that Mr. Barnes is capable of performing. The judge's decision on the four corners of the decision does not have substantial evidence to support that he is capable of performing the two semi-skilled jobs that were identified at step five because the judge failed to make any kind of findings regarding acquired skills that he got from his past work. So if we agree on that then the next question is why does it matter and do the grid rules and the medical vocational guidelines provide an alternative decision? So we maintain that they do not because Mr. Barnes's RFC was so limiting with the additional factors other than just the fact that he is limited to sedentary work but then the whole paragraph of following additional limitations make the grid rules inapplicable. So while they provide a framework in terms of people that are able to do the full range of sedentary work, they do not apply to this case in particular because of all the additional limitations that he has which means that the judge has to consult with a vocational expert. When you say they don't apply, forgive me, right there, it's not that they don't apply, right? They don't dictate an outcome. Correct. They do not dictate an outcome. I think the case law says direct an outcome, right? So they apply as a framework but then you've got to talk about the non-exertional and we're going to talk about transferable skills as well, right? But it's not that they don't apply. I just think of it differently. Yeah, they're kind of the broad starting point, the jumping off point. But when, and especially if you look at SSR 96-9, that goes through a lot of the scenarios where when you're starting with the broad base of sedentary unskilled jobs, when you start to add additional limitations, it starts to erode the occupational base. And the point of the grid rules... Meaning, in that phrase, erode the occupational base means there's fewer jobs in that subset that he can do, right? Exactly. So the grid rules provide, or basically the agency taking administrative notice that there are sedentary jobs. So if we don't have to consult with a vocational expert every time, the person is limited to sedentary work. So the grid does not answer the question here because you cannot ascertain from the grid that he was actually disabled or not disabled. So you have to then have specific findings on the issue of transferability of skills because you're dealing with semi-skilled work here. Basically, that's your position. The position is not that findings about transferable skills had to be made. It's that if the job wants to deny the case with semi-skilled jobs, then there need to be findings that he has some skills that allow him to do those jobs. He has those skills. You have to make specific findings. Yes. That makes perfect sense to me. But has the case law been consistent about the need to make those findings regarding transferable skills, or has it been inconsistent? There is a little bit of inconsistency about what has to actually be written in the judge's decision. So in Bray, they found that those findings need to be in the decision. There was one case that... In Bray, wasn't it the government's position that there need to be those findings? My understanding from reading Bray is that the government's position was that those findings didn't have to be made and that the court said that that is completely inconsistent with what's written in SSR 8241. That's different in this case, because Bray, the grids could be relied upon to find that there was actually a disability pursuant to the grids. Correct. You don't have that here. Correct. And that makes the difference between what the ALJ must do dealing with the situation that we have here. There have to be some specific findings on the issue of transferability. Do I have it right or wrong? Sorry, say that again? You need specific findings here. The ALJ did not make any specific findings about transferability in this case. Correct. And the important distinction in this case from, I believe it was Dennis, is that the vocational expert also did not testify about any transferable skills. So if the vocational expert had testified about transferable skills and the judge just failed to write it down in the decision, that's a very different situation than what we have here, which is no testimony, nothing in the record, that he has acquired skills that allow him to perform this job, these jobs. Counsel, I think we understand your argument. Let's hear from the government. Okay, great. Good morning, Your Honors. I'm Thomas Ellsbury. I'm here for the Commissioner. So it does come down to transferability of skills and when those need to be determined. The burden of proving disability is the claimant up through the fifth step. The Commissioner has the responsibility to show there are other jobs in significant numbers in the national economy that he can perform. The ALJ did that here. And there's two ways the ALJ can prove this. One, through the grids. Two, and or through V.E. testimony. The problem, though, would you agree that in this case the jobs that were identified as available for this claimant were semi-skilled? Yes. And would you agree, then, that if the jobs are semi-skilled jobs, then the grids alone cannot determine whether or not there's a disability for failure? The grids alone are insufficient in that circumstance to ascertain or determine whether or not a disability exists. Okay. And I would say we have to separate these two steps. Okay. Because it's V.E. that's identifying semi-skilled, but the issue of transferability is done only when you're looking at whether the claimant is either not disabled or disabled under the grids. You raised Bray. But here you can't really conclude from the grids as to whether he was or was not disabled. Or put another way, he was not disabled under the grids, unlike the Bray case. Exactly. All options were not disabled. Whether there was transferable skills, no transferable skills or unskilled. And that is the critical part about Bray, because Bray had an advanced age individual with identified You're losing me with your argument. Because I thought the requirement under the regulations was if the jobs are semi-skilled, the grids are just a way to determine whether or not there are jobs that this claimant can perform. There needs to be some discussion of what skills remain, because it's a semi-skilled position, you have to make a determination of what skills are there. And that's what I see that is missing in this record. Okay. Help me. So maybe this will help. The grids look backwards. The V.E. testimony looks forward. The grids are based on the RFC age, education and work experience. All the jobs are unskilled. That's what the agency has taken administrative action. All the jobs under the grids are unskilled. So that's out as far as the ultimate determination in this case, because all of the jobs identified were semi-skilled. So the grids don't get us where we need to be in terms of the final resolution. Exactly. So the V.E. doesn't, the vocational expert testimony doesn't get us there because the vocational expert didn't testify regarding skills. So where does that leave us? Well, as the court founds, and I think seven other district court organ in each case has found, there is no requirement that the ALJ have findings that the claimant has semi-skilled experience when the V.E. is testifying. That would be true if the V.E. addressed the issue. But here the V.E. didn't address the issue of skills. That's where I'm having some difficulty. We're in the record, can we look to the V.E. testimony to help us determine what skills remained for this claimant to rely upon. There is nothing there. So really is it your position that the ALJ then assumes this person has those skills? Where does it come from? It comes from the V.E. The vocational expert testimony. And the foundation for that testimony is the expertise of the vocational expert. So when the vocational expert is presented with the additional limitations. So forgive me, I've got to break that down. Somebody gets on the stand and he or she is a vocational expert and has background in this area and knows factually, and in this case, you know, what jobs this individual held and nothing more? Just assuming then that because of that prior job title that he or she has transferable skills? The prior job title was not relevant to the V.E.'s testimony. Okay. So what's the foundation for that V.E.'s testimony? Their expertise. What does that mean, their expertise? Their vocational expertise. That's according to the regulations. That's just divorced from the facts of the case? We're talking about what skills this particular individual possesses, aren't we? Not at this stage, no. We are at the grids. And then you have to make a determination whether transferable or not. And there was no transferability finding made here because it was not material. Well, you have a Social Security rule, I think, 82-41, which I think says that an individual must make a determination regarding a claimant's transferable skills, quote, when the issue of skills and their transferability must be decided. Isn't that this case? No. Because what 82-41 says is when a transferability of skills determination must be made, then the ALJ must make these findings. Okay. And we don't have to make a transferability finding here because why? Because it's not material to a finding of disability because with unskilled, skilled not transferable or skilled transferable, all the indications, because of the youth of the claimant, indicate not disabled. So it's not material to a finding of disability to do a transferability. But at step five, I thought the task was to identify jobs that this claimant could still perform, hence not disabled. Correct? So how do you get there if the VE says here are the jobs that he can still perform, but there's no finding that he has the skills to perform those jobs? I'm missing something here. I can see how it appears to be a non sequitur. On the first level, there is no requirement under the regulations or the rulings that the ALJ make a finding that the individual can do these positions. For example, let me reference Judge Papik in one of the cases that was identical to the facts of this case. Judge Papik noted, as our rulings state, the lower level of semi-skilled in some of those positions, like chauffeur or room waiter, I believe were the examples used, there are no skills really developed. So to say that you need skills to do a semi-skilled job when there are no skills that you could obtain from that, in other words, in, if you were looking at under the grids and chauffeur was your job, semi-skilled, but no transferable skills, because it's at that low level. Was chauffeur one of the jobs that she identified? At least some. This just, I just, it just does, this does not make sense to me. I know. That the V.E. would identify semi-skilled jobs, but then not take that next step to say, and he has these, the skills to do those jobs. And I think part of the confusion, part of the confusion comes from the two phases have been blended in the argument. As I said, you have the grid phase, and that's when you need to look at the past relevant skills and whether they're transferable or not. And we all agree, I believe, that the grids are not applicable here, because there's a... They're a framework, right? They're a framework. There's a framework. They apply. And then the other way that the commissioner can prove other jobs is through the V.E. testimony. Now, the ALJ gives all the limitations in the RFC, and the V.E. was there for the testimony about the past jobs. So it's all there. Counsel, I don't think that the V.E. identified chauffeur. No, no, I'm sorry. Yeah, that's what I asked you. Did the V.E. identify chauffeur for this claim? And she identified semiconductor assembler and production clerk. So your example of a chauffeur doesn't really translate to that, because these appear to be semi-skilled positions for which there has to be or there would need to be some identification of the skills that were transferred to these particular positions. How do we know that he has the skills to be a semiconductor assembler or a production clerk if no one has identified the skills that he has? And we have no idea what those are, by the way. Exactly. It's not comparable to the low-level sedentary positions that you were talking about. It's really qualitatively different when we're talking about the job titles that this V.E. identified, which Judge Walson just read, because honestly, what are those? It's not the same thing where we can say, well, we're assuming. This is the purpose of the vocational expert. Our regulations are clear on this. Their expertise is the foundation for their opinion. Agreed, if they give it. She did. It's like saying, trust us. She did. There's no requirement that either the ALJ or the V.E. enunciate or write down the specific requirements. It's not reviewable otherwise, counsel. Pardon me? It's not reviewable, and it's not fair for this claimant to be able to say, no, there's a mistake that's been made. I actually don't have those skills or O, as in this case. By the way, I'm in oxygen now, so I can't do that job because this non-exertional limitation interferes in some way. There's no way to challenge that. I see my time is up. Could I make one last comparison? Yes. So, Bray has been raised as a distinguished case because of the different age and the fact that there was an indication of disability in the guidelines. Bray was decided February 6th, 2009. That same week, Belshire was published February 10th, 2009. Belshire has the exact same facts as this case. Belshire and Bray were decided by the same panel. I believe, I think it's clear that that panel distinguished the differences between Bray and Belshire. And in Belshire, I believe they also found there was no need, I believe, because I've read so many of these cases. Like I said, there are seven district court cases and then two Ninth Circuit cases where they, under these exact facts, passed semi-skilled work, grids don't apply because they're not material. VE testifies to semi-skilled work. No discussion by the VE of semi-skilled work, perhaps other than in Dennis. Were those low level on the lower end of the sedentary range? Semi-skilled. Thank you. Semi-skilled range? I don't believe that was explored in any of those decisions. It was a matter of there was no need to do a finding of ability to do semi-skilled work when you're assessing what work they can do. One final question. Chris, you're over your time, but I asked opposing counsel whether, in her view, our case law has been consistent in this regard. I'd like to ask you the same question. A hundred percent consistent. I could not find a single case with this fact scenario where any court found that the ALJ had to make a finding about semi-skilled for the VE to assign. Tell me a strongest case again for the proposition that the VE does not have to testify about transferable skills when it's a semi-skilled position, like when semi-skilled positions are identified and no sedentary. Because I've seen the cases where there have been sedentary positions identified and semi-skilled positions identified, and because the sedentary positions were in the mix, there was no requirement. But you are going to cite me a case where it's only semi-skilled, the VE identifies semi-skilled positions, and we, the Ninth Circuit, held that no finding of transferability was required. What's that case? Belshire. Okay. Thank you. I would add in finality Judge Papik's decision in Craft v. Commissioner gets into that in very nice detail. I'm sorry? Judge Papik in the case of Craft v. Commissioner. Okay. Belshire says under Rule No. 201.28 and 202.21, the claimant is considered not italicized, not to have any transferable skills. Therefore, the ALJ's purported failure to identify transferable skills basically didn't matter. Right. Okay. Thank you. All right. Thank you, counsel. Rebuttal. And Belshire is an unpublished case as well. I would also add to Belshire in the minimal amount of information that is available in the decision. It doesn't say what the RFC was, and it also does mention that there were unskilled jobs identified. So without knowing all the content of the whole record, it's hard to draw that precise parallel. The one main point that I want to make is that the judge did not have to deny this case with semi-skilled jobs. With the grids acting as a framework, as my opposing counsel said, all options were not disabled. That is not true, because while the framework of the grids would direct not disabled for somebody who was sedentary, the grids do not direct an outcome in this case because of the incredibly limiting nature of the RFC. Am I correct in assuming that there's no specific precedent that's exactly like this case, which addresses the issue of when specific findings must be made dealing with transferability? I have not been able to find anything that is precisely the same as this based on the facts that are available just through published decisions. So the point that I wanted to make was that the judge could have denied this case by identifying unskilled jobs. He was not required to make transferability findings, but he had to do that. He did not do that. That's all I have. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case.
judges: Rawlinson, Christen, Block